## Persi v. Aliquippa Borough School District

*Clarence D. Neish,* for plaintiffs.
*Richard L. Neff,* for defendants.

ROWLEY, *J.,* October 19, 1979—Act No. 372, adopted by the Pennsylvania Legislature on December 29, 1972, P.L. 1726, as an amendment to section 1361 of the Public School Code of March 10, 1949, P.L. 30, 24 P.S. §13-1361, provides that when a local board of school directors makes provisions to transport public school pupils to and from the schools which they attend, the board must "also make *identical* provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools . . . during regular school hours on such dates and periods that the nonpublic school . . . is in regular session . . ." (Emphasis supplied.) This case is presently before the court on the request of plaintiffs, who are stu-

dents and parents of students who attend nonpublic schools within a distance of ten miles of defendant school district's boundaries, for a preliminary, mandatory injunction directing the defendants to provide plaintiffs with bussing provisions that are identical to the services being provided for the public school students.

It is well to bear in mind at the outset that this is not a trial or hearing on plaintiffs' request that they be permitted to maintain this suit as a class action pursuant to Pa.R.C.P. 1701 et seq. Nor is it a trial on the claim of the plaintiffs for reimbursement for expenses incurred by them and others in the alleged plaintiff-class for the transportation of nonpublic students from the date the act became effective until January of this year. Moreover, this is not a trial on the ultimate merits of plaintiffs' claims that all nonpublic bus routes, stops and schedules promulgated or adopted by defendants must be revised. On the contrary, this is a preliminary proceeding seeking what in effect would be a temporary order requiring that certain changes be made in the present nonpublic bus routes, stops and schedules pending a full trial on all issues raised and claimed by plaintiffs in their complaint. Finally, there is no constitutional issue presented for our consideration in this proceeding. The constitutionality of Act 372 was upheld by the Pennsylvania Supreme Court in Springfield School District v. Department of Education, 483 Pa. 539, 397 A. 2d 1154 (1979). An appeal, by the school districts involved in that case, to the United States Supreme Court was dismissed sub nom.: School District of Pittsburgh v. Pennsylvania, 47 Law Week 3825 on June 25, 1979.

In McMullan v. Wohlgemuth, 444 Pa. 563, 281 A. 2d 836 (1971), the court set forth the standard which we are required to follow in evaluating and deciding plaintiffs' request for a preliminary mandatory injunction. The court said, at pages 572 and 573:

"A preliminary injunction of any kind should not be granted unless both the right of the plaintiff is clear and immediate and irreparable injury would result were the preliminary injunction not granted . . .

"Mandatory preliminary injunctions should be granted even more sparingly than those which are merely prohibitory. A preliminary injunction is generally simply preventive, maintaining the status quo until the rights of the parties are determined after a full examination and hearing."

We have concluded that the case before us does, in a limited respect, fall within the exacting standard created by the Supreme Court and that plaintiffs' rights to at least partial relief are clear beyond question and the danger and potential injuries that will result from a continued violation of plaintiffs' rights, pending further trial and adjudication, cannot be remedied or repaired in any subsequent proceeding.

Initially, we note that in construing Act 372, we are to "ascertain and effectuate the intention of the General Assembly." In doing so we are not to disregard the "letter" of the Act's provisions that are "clear and free from all ambiguity." Statutory Construction Act of 1972, 1 Pa.C.S.A. §1921(a), (b). The requirement for the provision of "identical" services is, in our opinion, clear and unambiguous. Therefore, it is to be followed to the "letter." "Identical" is a strong word. It has been defined as "the

*very* same" and "*exactly* alike." (Emphasis supplied.) Webster's New World Dictionary, College Edition. Had the legislature intended a less strict comparison of the transportation services provided for nonpublic, as opposed to public, students they could, and would, have easily done so. In our opinion the legislative intent is clear. It is defendants' duty, under the act, to provide transportation services for plaintiffs that are exactly like, and the very same as, those provided for public students. In providing facilities, in establishing routes, in designating stops, and in designing schedules for nonpublic students, defendants are required to follow the very same policy, guidelines, and criteria that they use in providing the same services for public school students. The uncontradicted evidence in the record before us makes it clear that defendants have adopted one policy in establishing bus stops for public students, and a totally different policy or criteria in establishing stops for nonpublic students. It is abundantly clear to us that the adoption by defendants of two separate and different policies in this regard is a violation of the legislative mandate to make "identical provision" for the two classes of students.

Defendants' policy regarding the bussing of *public* school students who reside in the district is, as stated by defendants' council in his closing remarks, that the public students are to be "picked up at a point at or near their residence." The uncontradicted evidence in the record shows very clearly that this same policy is not followed by defendant school district in establishing routes and stops for *nonpublic* students who are entitled to be bussed pursuant to the provisions of Act 372. On the contrary, the stated policy and requirement of defendant is that a nonpublic student who is entitled to be

bussed under the provisions of Act 372 will be provided such transportation *on condition,* however, that the student walk, if neighboring children attending public schools walk to school, distances of up to 1.5 and 2.0 miles, depending upon the grade attended, before they are permitted or allowed to board their bus.* The dispute centers primarily on bus routes designated as "NP", "Q", and "Q-1." Students on these runs are transported to nonpublic schools outside defendant district's boundaries but within ten miles of its boundaries. In essence, students riding these busses must, if they are in grades one to eight and live within 1.5 miles of the Aliquippa Elementary and Middle Schools, or attend grades nine through 12 and reside within 2.0 miles of the Aliquippa High School, walk to the designated public school before being allowed to board their bus. These requirements are imposed even though in walking to the point of embarkation the students walk and travel along routes that are later followed by the busses in going to the nonpublic schools. This additional requirement of "forced walking" imposes a condition on nonpublic students that is not imposed on public students who are being bussed. There is no evidence that any public school student is required, as a condition of getting on his or her assigned bus, to walk a designated or prescribed distance. Such a disparity in treatment is a violation of the clear and unambiguous requirement of Act 372.

The policy that has been adopted and enforced by defendant in establishing bus routes and stops has

---

*This policy was apparently adopted for the first time for the current school year. Defendants' previous nonpublic school bussing plan was at least similar to that provided for public school students in regard to the location of bus stops.

the clear effect of placing an illegal burden on the right of nonpublic school students to be provided with "identical" transportation services. In interpreting the act we are to construe it liberally so as to effect its object: Statutory Construction Act, 1 Pa.C.S.A. §1928(c). We may also consider, in ascertaining the intent of the legislature, the occasion for passage of this act, and the "mischief" sought to be remedied: Statutory Construction Act, 1 Pa.C.S.A. §1921(c). The purpose of Act 372, as set forth by the Supreme Court in Springfield School District v. Department of Education, supra, at pages 550 and 551, is as follows:

"Act 372 was the product of legislative concern for the welfare of school children travelling between home and school. Protecting the child against the hazards of traffic, the exposure to inclement weather and the designs of persons who would harm them are well recognized secular governmental interests. Providing bus transportation is obviously an appropriate means to accomplish these purposes. This Court has previously expressed the view that a legislative enactment providing for bus transportation for school children was a legitimate legislative action to respond to a real danger."

In the same opinion, the court in quoting from its prior decision in Rhoades v. Abington Twp. School District, 424 Pa. 202, 226 A. 2d 53 (1967), stated that "'[t]he busing of school children is for their protection against hazards of the roadways and of traffic, against dangers occasioned by exposure to weather, against evils of child molestation.'" Thus, it appears to us that defendants' policy, as applied to nonpublic students violates the clear policy reasons of the legislature in enacting Act 372. The

protection from the dangers and hazards sought to be provided by the legislature cannot be given their full effect if before climbing aboard a bus the student is required to expose himself for a designated period of time and distance to the very hazards, evils, and dangers sought to be avoided.

Moreover it is our opinion that defendants err in their interpretation of the statute by making the focal point of the *"walking"* requirement for nonpublic students, the location of the public school that is attended by public school children of the same age and grade who live in the nonpublic school student's neighborhood. However, the public school location is not the focal point of the nonpublic student's right to be bussed. On the contrary, it is the school to be attended by the nonpublic school student that must be determinative of his rights. Once it is determined that that school is within ten miles of the district's boundaries and is beyond the 1.5 or 2.0 mile perimeter or distance that public school students are required to walk to their own schools then the nonpublic school student is entitled to be bussed without any further condition or burden placed upon that right. It is the location, and distance from his home, of *his nonpublic school* that is determinitive of the nonpublic student's rights and not the distance of the public school from his neighboring public school student. Once it is determined that a public school student is entitled to be transported by reason of the fact that he resides either 1.5 or 2.0 miles from the school that he attends, he is then provided transportation at a stop at or near his or her residence. To impose an additional burden on the nonpublic school student is, in our opinion, a clear violation of the purpose and language of Act 372. The nonpublic stu-

dent is entitled to have his or her routes and stops established under the same criteria and with the same considerations as those that apply to those provided for public school students.

Finally, in construing the act we are to be guided by the presumption that the legislature did not intend absurd or unreasonable results: Statutory Construction Act, 1 Pa.C.S.A. §1922(1). Several examples of how defendants' policy is applied to nonpublic students will suffice to show that it has achieved such unintended results. Ronald Piotrowski is a nonpublic student. He resides at 113 Shaw Street, Aliquippa. Shaw Street is in the extreme southeast section of Aliquippa. His home is more than 1.5 miles from the Aliquippa Middle School, but less than 2.0 miles from the high school. Ronald attends 9th or 10th grade at Quigley High School, which is in Baden, across the Ohio River. Ronald has been assigned by defendants to ride the "Q" bus and to board it at the Aliquippa High School. In order to board the bus, it is necessary for Ronald to walk from his home on Shaw Street down over a hillside on a pathway that has been described by his mother as "very dangerous." In the early morning darkness (Q bus leaves the Aliquippa High School at 7:15 a.m.) children in the vicinity of the pathway have been molested, battered and beaten up. After descending the hillside to Highland Avenue, Ronald makes his way to Franklin Avenue in the vicinity of Bank Alley. He then walks along the sidewalk on Franklin Avenue to Main Street. He walks up Main Street and then up another hillside to the Aliquippa High School. Q bus, after all of the students are aboard, makes its way to Franklin Avenue, the main artery of the business district in Aliquippa. It proceeds to transverse the same route

on Franklin Avenue which was walked a short time previously by Ronald. From Franklin Avenue it proceeds to Constitution Boulevard and eventually to Quigley High School. It may be noted that in entering onto Constitution Boulevard, the bus stops at a stop sign which is two blocks from Ronald's home, by way of Keihl Street. In addition to that stop the bus is required to make numerous other stops, for traffic purposes only, along Franklin Avenue. When asked why Ronald could not board the bus at one of those stops, or within two blocks of his home, defendants replied that since other 9th and 10th graders that live in that neighborhood and who attend the Aliquippa High School must walk that far, then Ronald must also walk an identical distance before he is allowed to board his bus.

• • •

The record is replete with numerous similar instances of a walking distance requirement imposed on nonpublic students who are entitled to be transported even though those requirements make it necessary that they walk along the same route that will subsequently be traveled by the bus they board, and in spite of the fact that a bus going to the same location will stop within a block or two of their home to pick up younger brothers and sisters, or other nonpublic students. . . . The imposition of such burdens on the children involved, and their parents, disclose a clear and obvious violation of the legislature's intent and the clear words of the statutory enactment that requires that "identical" transportation services be provided for nonpublic students. Moreover, in continuing that policy, it seems clear to us from the record in this case that the nonpublic students are exposed to hazards and dangers that the legislature attempted to eliminate

and the continued exposure of the students to those hazards and dangers and their potential harm cannot be compensated. Thus, to the extent that defendants' policy for bussing nonpublic students requires that they walk at least as far before boarding their bus as neighboring public school students walk to school as a condition or prerequisite to their statutory right, such policy must be halted and halted immediately.

Defendants, in defending their schedule, argue first of all that nonpublic students are treated the same as Beaver County Vo-Tech students that reside in Aliquippa. They argue that the Vo-Tech students are required to walk to the Aliquippa High School and they are bussed from there to the Vo-Tech School which is located in Center Township outside the district's boundaries. That is not, however, an apt comparison. There are approximately 90 11th and 12th grade students at the Aliquippa High School that attend the county Vo-Tech school. Forty-five of them are bussed from the High School to the Vo-Tech school in the morning and returned by bus at noon. The other 45 are bussed from the High School to the Vo-Tech school in the afternoon and returned to the High School at the end of the school day. During the half day that they are not attending the Vo-Tech School, they are taking general education courses at the Aliquippa High School. Their attendance records are kept at Aliquippa. They are Aliquippa public school students who, as a part of their educational program, are provided each day with a half day's training at the County Vo-Tech Center. They cannot be compared with nonpublic school students whose sole education is at the nonpublic school. Finally, defendants argue that it is not "fair" to bus nonpublic student from a neighborhood where public school

students are required to walk to school. This argument again focuses on the location of the public school as the criteria by which all students' rights must be determined. As we have said before, the nonpublic students' rights are to be determined on the basis of the location of the nonpublic school that they attend, not on the location of the public school attended by their neighbors. Be that as it may, however, we think it important to point out that whether the defendants consider the act to be "fair" or "unfair," it is a matter to be addressed to the legislature. The elected representatives of the people of this Commonwealth have determined, in what we perceive to be clear statutory language, that nonpublic school students are entitled to be bussed. They are entitled to "identical" services as those provided public students provided their school is within ten miles of the district's boundaries. If that is unfair (and we do not concede that it is) then only the legislature can correct it. The court has no right, no power and no authority to authorize any citizen or any municipality to ignore the clear and plain mandates of legislation which that citizen or that municipality believes to be unfair or unwise. To so hold would obviously result in anarchy, a situation where every citizen obeyed only those laws he agreed with and ignored and disregarded those which he did not approve. It is not the function of the court to substitute its opinion concerning the advisability or propriety of legislation for that of the peoples' elected representatives and once they have spoken it is our duty to apply the law as written by them. Those seeking a change in the law must apply to the legislature and not the court.

Having determined that plaintiffs are, in this pre-

liminary proceeding, entitled to some limited relief, the question arises as to the proper form of that relief. It would appear that relief can be afforded at little or no additional cost to defendant School District. A review of the record discloses that most of the nonpublic students, who are subjected to the "forced walking" policy, could be accommodated by establishing stops on the already established bus routes. No additional busses, and very little, if any, change in routes would be required. In fact, the expense of the "Q-1" bus route could be decreased by establishing stops in the Hollywood, Plan 12 and Maratta Road sections of Aliquippa, after the bus leaves the Sheffield Terrace, thereby eliminating the need for that portion of the route from Maratta Road to the High School and return. Without going into such details at this time, however, it is important that we constantly keep in mind the delicate balance to be maintained between the various branches of our form of government in this country. As we have had occasion to point out recently in another context (In Re: Petition of Philip T. Starr, Civil Action No. 1257 of 1978, Common Pleas, Beaver County) the persons elected by the citizens of the municipality should first be given the opportunity to carry out their obligation under a correct and proper interpretation of the statutory requirement. We have no desire to interfere in a function which is primarily legislative and executive in nature, unless events and circumstances force us to interfere. We have concluded that the Board of School Directors of the Aliquippa School District should be given the opportunity to comply with the statutory requirement before we resort to a more drastic procedure of drawing up routes and stops. For this reason

we will direct that defendants prepare a bussing plan for nonpublic students in accordance with this opinion.

## ORDER

Now, October 19, 1979, for the reasons stated in the foregoing opinion, we direct that a preliminary, mandatory injunction be entered in favor of plaintiffs and against defendants, and defendants are hereby ordered and directed to submit to the court, with a copy to counsel for plaintiffs, on or before October 23, 1979, a revised schedule of bus routes and stops for nonpublic school students drafted in accordance with the foregoing opinion. Plaintiffs shall have the right to file detailed exceptions, in writing, to defendants' submitted plan on or before October 25, 1979. In the event such exceptions are filed, the court will enter an appropriate order, after hearing. Defendants are further directed to file appropriate responsive pleadings to plaintiffs' complaint within 30 days from this date.